## The New York Piano Forte Co. v. Mueller.

1. **Mortgage:** SECURITY FOR DEBT: PRINCIPAL AND AGENT. Where one acting as the agent of another for the sale of pianos sold two and received in payment therefor certain lots of land, the deeds for which were executed to the owner, who, upon being advised of the conditions of the sale, instructed the agent that he had ordered the lots to be sold and would credit him with the proceeds: *Held*, that since the agent would have been entitled to any excess in the proceeds of the sale of the lots beyond the amount of his indebtedness, the conveyances, though deeds in form, were intended simply as security for the debt and not as a discharge of it, and accordingly should be treated as mortgages.

*Appeal from Pottawattamie District Court.*

THURSDAY, MARCH 23.

THIS is an action in equity, in which the plaintiff claims of defendant the sum of $1991.40 and interest, an alleged balance due upon account for pianos, and asks that two certain deeds be treated as mortgages and foreclosed, alleging that defendant caused said deeds to be executed to plaintiff as security for the sum claimed.

The defendant denies that the deeds were intended as mortgages, and alleges that they are absolute conveyances, and that they were received by plaintiff in payment of the sum of $1550 of the account. Defendant further alleges that at the time of the execution of the deeds it was agreed and understood that plaintiff should put the lots therein described upon the market and sell them immediately at some price, and the defendant agreed to pay whatever difference there might be between the price the lots brought and the purchase price. That plaintiff neglected to put the lots on the market, but held them for six years. That at the time of the transfer of the lots they were worth the price paid for them, but during the last five years they have greatly depreciated in value, whereby defendant has been damaged in the sum of $1550. That defendant supposed until the commencement of this action that the property had been sold and applied upon his indebt-

edness. Defendant prays that he may have a credit for $1550 as of the date of the deeds. The deeds bear date on the 16th and 17th days of December, 1868. One expresses a consideration of $750, and the other a consideration of $800. After the plaintiff's testimony was produced the defendant moved to transfer the cause to the law docket, and that it be tried by a jury upon the ground that it is an action at law. This motion was overruled.

The court found for the plaintiff $2828.39; treated the deeds as mortgages; foreclosed them and awarded special execution. The defendant appeals. This cause was in this court before. See 38 Iowa, 552.

*E. R. Paige*, for appellant.

*Clinton, Hart & Brewer*, for appellee.

DAY, J.—I. The transaction respecting the execution of the deeds is contained in the correspondence of the parties. On the 18th day of December, 1868, the defendant wrote plaintiff as follows:

"The large piano, and also No. 1, which I had to take back for want of holding tune, I have sold yesterday for city property and caused the same to be transcribed to you for value of $1550. I do not believe that you will be fully contented with it, but think I can convince you that it was the best I could do. In the first place I had to take back the piano No. 1 on account of the aforementioned defect, and another given in place of it. I could not recommend the piano under any circumstances and have sold it, as the best, for a lot and shall have no further trouble with it, because I sold it with reference to said defect. * * * * * The deeds I have delivered for you to the banker and real estate agent, N. P. Dodge, and put it in market for sale; the lots selected are good, valuable property, and worth full cost price and will bring next summer two thousand dollars. I will herewith also pledge myself for every loss that might arise from it to you, if you wish it. N. P. Dodge will write to you in a few days. * * * * I

could have sold the pianoforte last year for lots which I might have had for $150. Last week twenty-two lots, among which were the same, were sold for $450 a piece, but I did not feel justified to do it. The lots which I have conveyed are, two of them at $400 each, one block from where two lots for $1000 were sold last week. Then there are three lots at $250 each; the man who owned them sold two weeks ago twenty of them for $4200 cash in hand to Chicago and Rock Island Railroad for part of depot grounds, and he sold two lots in my presence for $250 cash each. In all he has sold sixty-two since last spring in the same addition. I have still on hand the No. 5, which I hope to sell right after New Year, when I shall let you have, right off, what I still owe for."

In reply to this, on the 6th of January following, the plaintiff wrote as follows : " We received in due time your kind favors of 8th and 18th of December, and also the advice of Mr. N. P. Dodge, about the receipt of both the deeds. We shall let Mr. Dodge sell the property, and credit your account with the proceeds.

We have instructed Mr. Dodge, preliminary, so to sell that it brings the cost price, $1,550 cash down, or in a short time. We have done this for the purpose that at least no loss accrue to you, though the conveyance of the five lots to us is of no service to us, inasmuch as we need cash, and a sale could possibly not so soon be effected; meanwhile we hope you will take all possible pains to make remittance to us soon. We can assure you that we are extremely suffering from scarcity of money prevailing in the West, as we have our principal agencies in the West, and, of course, every one relies on our indulgence * * * * * * * ."

This constitutes all the correspondence directly between the parties, which was introduced in evidence. Emil Gortyens, on behalf of plaintiff, testified that the deeds were not received by plaintiff as part settlement of defendant's intebtedness, but simply as a sort of security for the debt, the defendant proposing to have the property sold and the proceeds applied to his credit.

A letter of plaintiff, dated January 6, 1869, to N. P. Dodge,

was also admitted in evidence, as follows: "Your favor of the 19th ult. was duly received. We should be pleased to dispose of the five lots through your agency, provided the proceeds would net us the original cost, $1,550 cash down, or on short time. We shall write you further on the subject shortly * * * * * * * ."

The pivotal question in this case is whether these deeds were intended as absolute payment of a part of the debt admitted to be due, or as a mere security for it. It is evident from the whole tenor of defendant's letter, that he had no agreement with plaintiff respecting the conveyance, prior to the time the deeds were executed. The whole contract respecting them, so far as the evidence now shows, is contained in defendant's letter, and the reply of plaintiff. It is clear that no price for the lots was agreed upon between the parties, and there was no sum ascertained which was to be credited upon the account. The plaintiff wrote, "we shall let Mr. Dodge sell the property, and credit your account with the proceeds." To this defendant made no reply, so far as the evidence shows, so that he must be considered as having assented that plaintiff should hold the property on these terms.

1. MORTGAGE: security for debt: principal and agent.

If Dodge had sold the property for $3,000, or even for $2,000, which defendant was of opinion it would bring the summer after the deeds were executed, it cannot be doubted that defendant would have been entitled to the excess, after discharging the debt. It would then have been said the plaintiff agreed to sell the lots and apply the proceeds as a credit upon the defendant's debt; the proceeds can be thus applied only to the extent of what defendant owed; whatever is above that amount cannot be applied to the debt; it does not belong to plaintiff, for plaintiff had authority to apply it only in a particular manner, and not generally to his own use; it must, therefore, belong to defendant.

But, whenever it is proved that defendant would have been entitled to the excess of the proceeds of the sale of these lots, beyond what was sufficient to pay his debt, the fact is established that the conveyance was a security and not absolute

payment. The very fact that he would have been entitled to this excess shows that he might have paid off the debt secured, and then compelled a reconveyance of the lots. In other words, he might have compelled the plaintiff to acknowledge satisfaction of the debt, and to surrender the security. If he could do this, the conveyances, though deeds in form, were mortgages in fact, and the court below properly treated them as such. Appellant's counsel concedes that, if there was any right of redemption reserved to Mueller, he has no right to complain, because he could have paid the money and redeemed the land at any time. That he might have done so, and thus prevented loss from a failure to dispose of the lots at the proper time, we have no doubt.

AFFIRMED.